IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

BARBARA SEIBERT,

        **Plaintiff,**

vs.                                                                            No. CIV 01-373 RLP/DJS

**SEARS, ROEBUCK AND CO.,**
a New York corporation,

        **Defendant.**

## MEMORANDUM OPINION AND ORDER

Plaintiff, Barbara Seibert, filed suit against Defendant Sears alleging gender discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e *et seq.*, and a violation of the New Mexico Human Rights Act, N.M.S.A. §28-1-1, *et seq.* (Count I), breach of contract (Count II), breach of implied covenant of good faith and fair dealing (Count III) and retaliation (Count V).[1] Plaintiff claims that Sears demoted her by transferring her to a different sales department, that she was treated differently than similarly situated male employees, and that Sear's retaliated against her after she filed a claim with the Equal Employment Opportunity Commission challenging the demotion/transfer. This matter is presently before the court on Sear's motion for summary judgment (Doc. No.26). As set forth in more detail below, defendant's motion for summary judgment is granted and plaintiff's complaint is dismissed in its entirety.

### I. Summary Judgment Standard

---

[1] Plaintiff has abandoned her claim for wrongful discharge. (Docket No. 27, p. 8). She remains an employee of Sears. (Plaintiff's Affidavit, ¶2, attached to Docket No. 27).

Summary judgment is appropriate if the evidence presented by the parties demonstrates "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A "genuine" issue of fact exists if the evidence is such that a reasonable jury could resolve the issue either way. *See Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1988), (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of fact is "material" if it is essential to the proper disposition of the claim. *See id.*

The moving party for summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See id.* at 670-671 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the moving party will not bear the burden of persuasion at trial, that party "may make its prima facie demonstration simply by pointing out to the court a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Id.* at 671 (citing *Celotex*, 477 U.S. at 325). Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party to go beyond the pleadings and set forth specific facts from which a reasonable jury could find in his or her favor. *See id.*

Finally, the court notes that summary judgment is not a "disfavored procedural shortcut;" rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action." *Celotex,* 477 U.S. at 327 (quoting Fed.R.Civ.P. 1).

## II. Factual Background

Plaintiff began working at Sears in the Coronado Mall in October 1999 as a sales associate in division 46, refrigerator sales. Part of her job involved selling maintenance agreements. Each department at Sears had its own goals for the sale of maintenance agreements. Within each department, however, the sales goals are the same.

All commissioned sales personnel were advised in December 1999 that employees with negative impact in maintenance agreement contract sales were subject to removal from their division. (Plaintiff's deposition, attached as Ex. C, p. 46, l. 13-21 to Docket No. 33).

Plaintiff received a "PPI" (Performance Plan for Improvement) from her immediate supervisor, Fred Thurman, on April 11, 2000, for "not meeting individual sales goals and performance standards." Plaintiff's actual performance versus performance goals was as follows:

|  | Actual performance | Performance Goal |
|---|---|---|
| 1999 Product sales | $126, 091 | $156,816 |
| 1999 Sales per Hour | 318 | 396 |
| 2000 Jan/Feb Product sales | 75,420 | 112,236 |
| 2000 Jan/Feb Sales per Hour | 267 | 398 |

In 1999, and again in the first quarter of 2000, Plaintiff's sales of maintenance agreements, as a percentage of adjusted merchandise sales were below the standard set for the her department, and in the first quarter of 2000 were the lowest in the department 46[2].

Plaintiff was notified on April 11, 2000, that she would be moved from department 46 to department 22, kitchen appliances. This move took place on April 15, 2000. One male employee, Gene Lopez, was given an additional 45 days to improve, but was eventually transferred to a different

---

[2] Exhibits C and D to Docket No. 26 and Exhibit 4 to Docket No. 27 establish the basis upon which Sears evaluated sales associates in terms of the sale of maintenance agreements. The dollar total of maintenance agreement sales divided by the dollar total of adjusted merchandise sales results in a percentage which is compared to the standard set for each department. (Docket No. 26, Exhibits C and D). The associate impact is calculated by subtracting the income generated by the associate's actual sales of maintenance agreements from the anticipated total, a set percentage of actual sales made by the associate.

3

department.³  Another male employee, Harry Hickle, was transferred prior to March 31, 2000.⁴ There were fewer sales associates in kitchen appliances than in refrigerators, and sales associates had the potential of earning more in kitchen appliances than in refrigerator sales.

Plaintiff's assertion that she earned $375 less per month after her transfer to kitchen appliances is belied by her payroll records, which establish an increase in her effective rate of pay from $9.53 per hour to $12.78 per hour following the transfer.⁵

Following her transfer to kitchen appliances Plaintiff filed a complaint with the Equal Employment Opportunity Commission. She was not returned to refrigerator sales.

Plaintiff did not leave the Coronado Sears store involuntarily. She requested that she be transferred to a Sears store in Louisiana because her husband obtained a job there, and Sears granted her request for a transfer.⁶

---

³As of March 31, 2000, Mr. Lopez was working in department 26(Docket No. 27, Ex. 4). This was identified in Mr. Thurman's deposition as "washers and dryers." (Docket No. 26, Ex. A, p. 51, l. 27). He was subsequently transferred to the refrigerators. *Id.* Plaintiff argues in her Response brief that several male employees were given 45 days to improve before they were reassigned. (Docket No. 27, p. 2-3, ¶ 8). In support of this statement, she cites to Docket No. 26, Ex. D, and Defendant's Brief in support of its Motion for Summary Judgment. Neither supports this allegation.

⁴As of March 31, 2000, Mr. Hinkle was working in department 22. (Docket No. 27, Ex. 4). He had been transferred to that department from refrigerators. (*Id.* and Docket No. 26, Ex. A, p. 51, l. 27).

⁵This calculation of Plaintiff's earnings was derived from payroll records relative to the period of time Plaintiff was employed at that Sears Coronado Mall store. (Exs. A & B to Defendant's Reply, Docket No. 28). The materials submitted to the Court are missing payroll stubs from two pay periods, 4/2-4/15/00 and 8/20-9/2/00. The hours worked and gross pay earned in these two periods can be extrapolated, however, from the documents provided. For 4/2-4/15/00, Plaintiff worked 71.5 hours and earned $732.48. For 8/20-9/3/00 Plaintiff worked 78.7 hours and earned $1,316.62. Consideration of these figures increases Plaintiff's effective hourly rate from $9.58 before the transfer to $13.14 after the transfer. Her earnings on a bi-weekly basis, increased slightly after the transfer, from $811.04 to $813.25.

⁶After moving to Louisiana, Plaintiff worked in Department 3-57 at the Sears store in Shreveport. The Court has not been provided with any information on what items were sold in this department. As Plaintiff has limited her claim to "acts . . .( occurring) . . . at the Sears store located in the Coronado Mall in Albuquerque, New Mexico" (Docket No. 14, ¶3), Plaintiff's department assignment and income

**III. Discriminatory Demotion (Count I)**

The plaintiff in a Title VII case and in a case brought under the New Mexico Human Rights Act bears the initial burden of setting forth a *prima facie* case of discrimination. The plaintiff must show: 1) she is a member of the class protected by the statute; 2) she suffered an adverse employment action; 3) she was qualified for the position at issue; and 4) she was treated less favorably than others not in the protected class. *Cole v. Ruidoso Municipal Sch.*, 43 F.3d 1373, 1380 (10th Cir.1994); *Sonntag v. Shaw*, 130 N.M. 238, 22 P.2d 1188, 1196, 2001-NMSC-015 (NM 2001), *citing Smith v. FDC Corp.,* 109 N.M. 514, 517, 787 P.2d 433, 473 (NM 1990) (Adopting evidentiary methodology of Title VII for determining discrimination under the New Mexico Human Rights Act). Once the plaintiff establishes a *prima facie* case, the burden shifts to the defendant to articulate a legitimate nondiscriminatory reason for the action. If the defendant does so, the plaintiff must show the defendant's proffered reasons are pretextual. *See J. Jones v. Unisys Corp.*, 54 F.3d 624, 630 (10th. Cir.1995)

Defendant contends that Plaintiff's claims of discriminatory demotion fail as a matter of law because plaintiff cannot establish her *prima facie* case. The Court agrees that Plaintiff has failed to show that the transfer from selling refrigerators to selling kitchen appliances constituted an adverse employment action.

The Tenth Circuit liberally defines the phrase "adverse employment action." *See Gunnell v. Utah Valley State College*, 152 F.3d 1253, 1264 (10th Cir.1998); *Jeffries v. Kansas*, 147 F.3d 1220, 1232 (10th Cir.1998). Such actions are not simply limited to monetary losses in the form of wages or benefits. *See Berry v. Stevinson Chevrolet*, 74 F.3d 980, 986- 87 (10th Cir.1996). (Plaintiff

---

following her move to Louisiana are not relevant.

5

suffered adverse employment action when employer reported that Plaintiff was suspected of a crime, creating risk of humiliation and damage to reputation). Instead, courts take "a case-by-case approach," examining the unique factors relevant to the situation at hand. *Jeffries*, 147 F.3d at 1232. Nevertheless, a lateral transfer which causes 'a mere inconvenience or an alteration of job responsibilities' without diminution in salary or benefits is not an adverse employment action. *Sanchez v. Denver Public Schools*, 164 F.3d 527, 532 (10th Cir.1998); *see also Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 660-761, 118 S.Ct. 2257, 2268, 141 L.Ed.2d 633 (1998) (conduct constitutes adverse employment action if it "constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits"); *see also Bennett v. Quark, Inc.,* 258 F.3d 1220 (10th Cir. 2001) (reassignment is not a demotion unless the employee can show that she receives less pay, has less responsibility or is required to utilize a lesser degree of skill than her previous assignment).

Plaintiff has failed to establish any adverse employment action. She retained the same job title, sales associate. She had the potential to earn more in the new department, and indeed her income increased. She had no diminution of job benefits. She alleges no change in working conditions. She was accommodated in her request for a transfer when her husband obtained work out of state. She does not claim she was denied work hours. Although her duties changed from selling refrigerators to kitchen appliances, she does not show that they were less significant, or required less skill or responsibility.

Accordingly, I find that Plaintiff has failed to establish a *prima facie* case of gender discrimination under both Title VII and the New Mexico Human Rights Act.

**IV. Retaliation (Count V)**

To establish a *prima facie* case of retaliation, a plaintiff must prove: (1) protected opposition to discrimination or participation in a proceeding arising out of discrimination; (2) adverse action by the employer and (3) a causal connection between the protective activity and the adverse action. *Williams v. Rice*, 983 F.2d 177, 181 (10th Cir. 1993). If a *prima facie* case is established, the burden of production shifts to the defendant to produce a legitimate, nondiscriminatory reason for the adverse action. If evidence of a legitimate reason is produced, the plaintiff may still prevail if she demonstrates the articulated reason was a mere pretext for discrimination. The overall burden of persuasion remains on the plaintiff. *Sorensen v. City of Aurora*, 984 F.2d 349, 353 (10th Cir. 1993).

Plaintiff was moved from Department 46 to Department 22 on April 15, 2000. (Docket No. 26, Undisputed Fact No. 8; Docket No. 27, ¶3). (Docket No. 14, ¶ 4). The transfer, which occurred before Plaintiff complained to the EEOC, cannot form the factual predicate for a claim of retaliation. *EEOC v. Swift Transportation Co., Inc.,* 120 F.Supp2d 982, 990 (D. Kan. 2000).

Plaintiff filed a Charge of Discrimination against Sears on May 15, 2000. (Docket No.14, ¶4). She argues that she suffered adverse employment action thereafter because she was not returned to refrigerator sales. (Docket No. 27, p. 9, ¶ c). Plaintiff has presented no evidence indicating that remaining in kitchen appliances constituted an adverse employment action. Her job title did not change after she filed her claim of discrimination. She did not suffer a loss of income or job benefits. She points to no change in working conditions. She was accommodated in her transfer request. She presents no evidence of lessened work hours. There has been no showing that her assigned duties were less significant or required less skill or responsibility after she filed her claim of discrimination.

Accordingly, I find that Plaintiff has failed to establish a *prima facie* case of retaliation.

## V. Breach of Contract.  (Counts II and III)

Plaintiff contends that genuine issues of material fact exist regarding her contract claims because it was against Sears' policy to discipline her for failing to meet her maintenance agreement sales goals. (Docket No. 27, p. 8). Plaintiff relies on a provision in Sears' "Maintenance Agreement Code of Conduct" which states:

> Position Statement:
>
> Any associate who affirmatively offers the MA to our customers cannot be disciplined or terminated on the basis of poor MA sales. Associates who are deficient in their total sales performance must be given the benefit of appropriate and thorough training, and concentrated efforts by management must be made to developed acceptable performance levels.

(Docket 27, p. 8 and Docket No. 28, p. 10-11 and Ex. E).

Plaintiff contends that this provision was breached by her transfer from refrigerator sales to kitchen appliance sales, and that she sustained damages due to the transfer because her income lessened. (Docket No. 27, p. 8). As stated before, the evidence establishes that Plaintiff's income did not decrease following her transfer from refrigerator sales to kitchen appliances.

Assuming without deciding that this policy is a term of Plaintiff's employment contract with Defendant[7], Plaintiff has provided no evidence of a policy prohibiting departmental transfer, be that considered discipline or not, for failing to meet sales goals in addition to sales of maintenance agreement contracts. The undisputed evidence is that Plaintiff failed to meet sales goals in three areas, maintenance agreements, sales per hour and product sales.

---

[7] The parties have not briefed the issue of whether Plaintiff was an "at will" employee, which could bear on the viability of her contract claims. *See Steiber v. Journal Publishing Co,* 120 N.M. 270, 901 P.2d 201 (Ct. App. 1995). (In at will employment, the right to terminate includes the right to insist on prospective changes of employment as a condition of continued employment.).

Finally, Plaintiff apparently contends that Sears' failure to give her an additional forty-five days after March 31, 2000, to improve her sales figures was a breach of contract or breach of the implied covenant of good faith and fair dealing. (Docket No. 27, p. 8). There is simply no evidence of an agreement to this effect giving rise to a claim for breach of contract. Plaintiff was not terminated from her employment. No implied covenant of good faith and fair dealing is implicated by her transfer from one sales department to another.

Accordingly, as to Plaintiff's claim for damages for breach of contract and breach of implied covenant of good faith and fair dealing, I find that no genuine issue of material fact exists and that Defendant is entitled to judgment as matter of law.

**VI. Conclusion.**

**IT IS THEREFORE ORDERED** that Defendant's Motion for Summary Judgment (Docket No. 26) is granted. Plaintiff's Complaint is dismissed with prejudice.

Richard L. Puglisi
United States Magistrate Judge
(sitting by designation)

Attorneys for Plaintiff:
Jeffrey A. Dahl
Lamb, Metzgar, Lines & Dahl, P.A.

Attorneys for Defendant:
H. Nicole Schamban
Narvaez Law Firm P.A.

9